**SEALED**  3:25-mj-00313

DISTRICT OF OREGON, ss:       AFFIDAVIT OF SHAWN COLBRIDGE

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Shawn Colbridge, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent with Homeland Security Investigations (HSI) and have been since January of 2023. My current assignment is to the Border Enforcement Security Taskforce (BEST) Financial. My training and experience include attending the Federal Law Enforcement Training Center (FLETC) for Uniformed Police Training Program (UPTP), Criminal Investigations Training Program (CITP), and HSI Special Agent Training (HSISAT). I was trained to conduct investigations relating to violations of Title 8 (Aliens and Nationality), Title 18 (Crimes and Criminal Procedure), Title 19 (Customs Duties), and Title 21 (Food and Drugs), of the United States Code. I have received formal training, as well as extensive on-the-job training, in the investigation of crimes related to immigration, money laundering, narcotics trafficking, and other criminal activities, especially crimes with a transnational nexus.

2. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; the review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

3. I submit this affidavit in support of a criminal complaint and arrest warrant for Temika GARDNER, for Assaulting a Federal Officer in violation of 18 U.S.C. § 111(a). As set forth below, there is probable cause to believe, and I do believe, that GARDNER committed the offense of Assaulting a Federal Officer, in violation of 18 U.S.C. § 111(a).

**Applicable Law**

4. Title 18, United States Code, Section 111(a) makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while that person is engaged in or on account of the performance of their official duties. The statute incorporates the common-law definition of assault as (1) "a willful attempt to inflict injury upon the person of another," or (2) "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. Dat Quoc Do*, 994 F.3d 1096, 1100 (9th Cir. 2021). Persons designated in section 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties. Under section 111(a), simple assault is a misdemeanor punishable by up to one year of imprisonment, but where the assaultive acts involve physical contact with the victim, the offense is a felony. Under section 111(b), an assault using a deadly or dangerous weapon or one that results in bodily injury is a felony punishable by imprisonment for up to 20 years.

**Statement of Probable Cause**

5. On or about October 23, 2025, Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) Deportation Officers (DO) were conducting surveillance of an apartment complex in the area of 14302 E. Burnside Street, Portland, OR 97233 to make a lawful arrest of a person (the "Arrestee"), for whom they had a signed I-200, Warrant for Arrest of Alien. ERO DOs arrived at approximately 5:45 a.m. The ERO DOs identified a vehicle registered to the Arrestee at the Burnside address listed above, a 2012 Volkswagen (the "Volkswagen"). The ERO DOs were wearing their police kit, which included displaying badges and law enforcement markings (*see* the below images).



6. At approximately 7:40 a.m., an ERO DO (Victim 2) identified the Arrestee leaving the area of his apartment with an unidentified female (UF) walking towards the Volkswagen. The Arrestee and UF entered the Volkswagen and started driving out of the apartment complex. An ERO DO (Victim 3) activated the installed lights and sirens in his government-owned car to initiate a vehicle stop of the Volkswagen. Although the Volkswagen initially tried to reverse to escape officers, the Volkswagen was blocked by a second law enforcement vehicle. An ERO DO (Victim 1) approached the driver side of the Volkswagen, telling the Arrestee to lower his window and shut off the vehicle. After several commands, the Arrestee lowered his vehicle window, although Victim 1 had to reach into the Volkswagen to place the vehicle into park.

7. The Arrestee exited the vehicle, while Victim 1, along with two additional DOs (Officer 1 and Victim 4), assisted with the arrest of the Arrestee and was walked to Victim 1's government car, which had an area designed for detention. ERO DOs placed the Arrestee in the rear of the detention vehicle and buckled him in for safety. ERO DOs noticed people starting to gather observing the scene and decided to clear the area with the Arrestee in custody. Victim 1, Victim 2, and Victim 4 briefly remained on scene while preparing to depart.

**Affidavit of Shawn Colbridge** **Page 3**

8.  Victim 1 entered the driver seat of the detention vehicle and observed a female, later identified as Temika GARDNER,[1] standing behind his vehicle impeding his movement while she held up her phone appearing to record. Victim 1 pulled forward and attempted to make a U-turn with his vehicle while UF and GARDNER were in the area of his vehicle. Victim 1 halted his vehicle to change gears when he observed GARDNER and UF open the rear door of the detention vehicle, allowing the Arrestee to escape from the van.[2] The Arrestee ran from the vehicle towards his apartment while Victim 4 gave immediate chase and was able to catch and tackle the Arrestee to the ground. Victim 1 and Victim 2 quickly arrived on foot to assist Victim 4 in gaining control of the Arrestee, who was actively resisting. Officers were able to gain control of the Arrestee and get him to his feet.

9.  Victim 1 and Victim 2 began to escort the Arrestee back to the vehicle while Victim 4 talked with the UF. Victim 4 returned to the escorting officers with GARDNER and UF following. Based on officer accounts, GARDNER appeared to still be holding her phone up and recording. GARDNER and the UF placed their hands on officers' multiple times, impeding officer movement.

10.  While still holding her phone up, GARDNER struck Victim 1 in the face, grabbed ahold of his face covering, pulling it off and throwing it to the ground. GARDNER also swung her hand and hit Victim 2 at least two times in the face, one of the contacts knocked off his sunglasses causing them to break. Victim 2 gave verbal commands for her to back up. Victim 2 pulled out his OC spray and warned GARDNER that he would spray her. Victim 2 used his OC spray on GARDNER but missed the target of her eyes. GARDNER briefly appeared to calm once OC spray was used.

---

[1] I have also reviewed GARDNER's criminal history report, which shows obstruction and resisting arrest charges in Seattle, Washington and Portland, Oregon. These charges are from approximately the 2008—2009 time frame.

[2] It is unclear whether GARDENER, the UF, or both, opened the van door.

**Affidavit of Shawn Colbridge**                                                                 **Page 4**

11. The Arrestee started to struggle with escorting officers again, causing them to focus on him. GARDNER again approached Victim 2 and attempted to grab his face and mask while appearing to still be recording on her phone. Victim 2 attempted to move his head away from GARNDER's hands while still struggling to gain control of the Arrestee.

12. During the incident, Victim 4 grabbed Victim 1's radio and sent out a distress call requesting assistance from the rest of their team. After GARDNER stated that the officers' badges were fake, Victim 4 displayed his medal police badge to GARDNER. While Victim 4 was turned away from GARDNER, GARDNER pulled on the rear of Victim 4's face mask with enough force to pull him back.

13. Officer 1 and Victim 3 returned to the scene to assist with crowd control and saw GARNDER and UF still on top of officers struggling with control of the Arrestee. Victim 3 told everyone in the area to get back and was attempting to keep GARDNER and UF away from officers while they escorted the Arrestee to the detention vehicle. While holding her phone in one hand, GARDNER brought her other hand to the rear, as if getting ready to punch, and swung her rear hand toward Victim 3's face, striking the left side of his jaw. Victim 3 told GARDNER that she was under arrest and GARDNER still appeared to be in a stance ready to strike again.

14. Victim 3 approached GARDNER from the front and Officer 1 approached her from the side. GARDNER actively resisted by pulling away from officers and she fell on top of Victim 3 by landing on the side on his knee. GARDNER struggled with officers on the ground for approximately a minute while Victim 3 shifted to get out of under her. A different supervisory DO approached and assisted with GARDNER's arrest. Officers detained GARDNER. When GARDNER started to complain that she could not breathe, officers helped her off the ground to relieve chest pressure.

15. At approximately 9:30 this morning, I reviewed two videos provided to me by defense counsel in this case. One shorter video does not capture the conduct described above and pans around the scene several times at what would be times relevant to this Complaint. In

**Affidavit of Shawn Colbridge**                                                                                                                   **Page 5**

the longer video that I reviewed, it appears to pick up at about the time that officers were taking the Arrestee back to the detention vehicle. The videos shows GARDNER at various times coming toward and backing away from the incident, while filming with her phone. The video pans back and forth around the scene during the time described in paragraphs 11-12, at times showing GARDNER filming with her phone. At other times, a car is blocking the video footage. The video shows the time frame described in paragraphs 13-14, including showing GARDNER filming with her phone. The video does not clearly show what happened – it is shaky and somewhat blurred – and I cannot see whether GARDNER hit Victim 3. I also see that officers are blocking the view of the camera at various points just before GARDNER is arrested, possibly blocking the video at a key time.

## Conclusion

16.    Based on the foregoing, I have probable cause to believe, and I do believe, that Temika GARDNER committed Assault of a Federal Officer in violation of Title 18, U.S.C., Section 111(a). I therefore request that the Court issue a criminal complaint and arrest warrant for Temika GARDNER.

17.    Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by an Assistant United States Attorney, who advised me that the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

## Request for Sealing

18.    It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may

cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize the investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*By phone pursuant to Fed. R. Crim. P. 4.1*
Shawn Colbridge
Special Agent, HSI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __10:50 am__ on October 24, 2025.

*Jolie A. Russo*
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge